UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN A. MARTIN, | No. 2:19-cv-0994 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, witness testimony, and step five finding were erroneous.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 6 & 10.)

1

For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

In September of 2015, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on January 1, 2013. (Transcript ("Tr.") at 17, 274-84.) Plaintiff's alleged impairments included epilepsy, sleep apnea, memory loss, and right ankle pain. (Id. at 305.) Plaintiff's applications were denied initially, (id. at 206-10), and upon reconsideration. (Id. at 214-23.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on September 26, 2017. (Id. at 76-111.) Plaintiff was unrepresented and testified at the administrative hearing. (Id. at 76-82.) In a decision issued on March 14, 2018, the ALJ found that plaintiff was not disabled. (Id. at 34.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; right shoulder tear; obesity; seizure disorder; anxiety disorder; and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to frequent overhead reaching on the right; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he can never climb ladders, ropes or scaffolds; he can never work around unprotected heights; he must

>avoid concentrated exposure to moving mechanical parts; he cannot perform any commercial driving; he is limited to understanding, remembering, and carrying out simple, routine and repetitive tasks; and he is limited to using judgment limited to simple work related decisions.
>
>6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
>7. The claimant was born [in] 1964 and was 48 years old, which is defined as a younger individual, on the alleged disability onset date. The claimant subsequently changed age categories, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured of December 31, 2015, and is currently 54 years old, which is still defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).
>
>8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
>9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 20-34.)

On January 9, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's March 14, 2018 decision. (Id. at 2-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 29, 2019. (ECF. No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

////

support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

////

**APPLICATION**

Plaintiff's pending motion asserts the following four principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ improperly rejected lay witness testimony; and (4) the ALJ erred at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 11) at 11-19.[3])

**I.   Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

////

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

A. **Dr. Bao Nguyen**

Plaintiff first challenges the ALJ's treatment of the opinion offered by Dr. Bao Nguyen, an examining physician. (Pl.'s MSJ (ECF No. 11) at 11-12.) The ALJ discussed Dr. Nguyen's opinion, stating:

> Dr. Nguyen, the consultative examining physician, opined that the claimant can push, pull, lift, and or carry 15 pounds occasionally and 10 pounds frequently; he can stand and or walk for two hours out of an eight hour workday; he has no restriction for sitting; he can occasionally walk on uneven terrain, he is able to perform fine manipulation and simple grasping frequently; he cannot stoop, crouch, kneel, climb, balance, or crawl; it is medically necessary for him to use a single point cane for ambulation; and he should be restricted from working with heavy moving machinery.

(Tr. at 30) (citation omitted).

The ALJ afforded Dr. Nguyen's opinion "reduced weight." (Id.) In support of this determination, the ALJ asserted that Dr. Nguyen's opinion was "inconsistent with the record as a whole[.]" (Id.) However,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

The ALJ also asserted that Dr. Nguyen's opinion was "internally inconsistent," with the "mostly normal physical examination[.]" (Tr. at 30.) Dr. Nguyen's examination, however, found that plaintiff's gait was "limping on his left side." (Id. at 1395.) That "[s]traight leg raise is positive at 15 degrees bilaterally." (Id.) Plaintiff was "not able to bend, squat, tiptoe and heel walking," as well as "[t]ender to palpation at thoracic paraspinal area and to L5-S1 sacral area." (Id.) These are not normal findings.

The ALJ also supported the decision to discredit Dr. Nguyen's opinion that it was medically necessary for plaintiff to use a cane, as "inconsistent with the record as a whole," and the fact "that no treating physician prescribed a cane . . . for claimant." (Id.) However, the use of a cane appears consistent with Dr. Nguyen's findings on examination, such as plaintiff's limp, positive straight leg raise, inability to heel walk, etc. Moreover, plaintiff testified that a doctor "asked" plaintiff about a cane "[a]nd then the nurse gave it to me." (Id. at 98.)

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Nguyen's examining opinion.

### B. Dr. David Richwerger

Plaintiff also challenges the ALJ's treatment of the opinion offered by Dr. David Richwerger, an examining physician. (Pl.'s MSJ (ECF No. 11) at 13-14.) The ALJ discussed Dr. Richwerger's opinion, stating:

> Dr. Richwerger, the consultative examining psychologist, opined that the claimant has marked impairment in his ability to perform detailed and complex tasks; he has no impairment in his ability to perform simple and repetitive tasks; he has moderate impairment in his ability to perform work activities on a consistent basis; he has no impairment in his ability to perform work activities without special supervision; he has mild impairment in his ability to complete a normal workday or workweek without interruption from a psychiatric condition; he has mild impairment in his ability to understand and accept instructions from supervisors; he has mild impairment in his ability to interact with coworkers and the public; he has no impairment in his ability to maintain regular attendance in the workplace; and he has mild impairment in his ability to deal with the usual stresses encountered in competitive work.

(Id. at 31.) The ALJ purported to afford Dr. Richwerger's opinion "substantial weight." (Id.)

However, a claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant

7

medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ's RFC determination did not account for any limitation—let alone a moderate limitation—in the ability to perform work activities on a consistent basis, as opined by Dr. Richwerger.  (Tr. at 23.)  And the ALJ offered no reason for failing to credit Dr. Richwerger's opinion with respect to this limitation.  As such, the ALJ committed legal error.  See Bagby v. Commissioner of Social Sec., 606 Fed. Appx. 888, 890 (9th Cir. 2015) ("The ALJ's RFC assessment limited Bagby to 'simple, repetitive tasks,' no contact with the public, and 'occasional interaction with coworkers.'  It did not reflect Dr. Stuckey's finding that Bagby was limited in her ability to '[r]espond appropriately to usual work situations and to changes in a routine work setting.'  This is distinct from Bagby's limited ability to interact with others, to understand, remember, and follow 'complex instructions,' and to 'make judgments on complex work-related decisions.'"); Smolen, 80 F.3d at 1282 (finding legal error where ALJ ignored medical evidence of claimant's impairments without explanation); Cotton v. Bowen, 799 F.2d 1403, 1408-09 (9th Cir. 1986) (finding legal error where ALJ's findings ignored medical evidence without giving specific, legitimate reasons for doing so), *superseded by statute on another point as stated in* Bunnell v. Sullivan, 912 F.2d 1149 (9th Cir. 1990)).

Accordingly, for the reasons stated above, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

**II.     Plaintiff's Subjective Testimony**

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony. (Pl.'s MSJ (ECF No. 11) at 15-17.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

////

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[4] Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59

---

[4] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

9

(9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id.

Here, after briefly summarizing plaintiff's testimony the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision."[5]  (Tr. at 24.)

One of the reasons offered by the ALJ for rejecting plaintiff's testimony was that plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "inconsistent," as plaintiff testified to not receiving "any medical treatment for his back" and was not taking "prescription pain medications[.]"  (Id. at 24.)  Moreover, plaintiff was prescribed epidural steroid injections, but "declined the injections[.]"  (Id. at 25.)  And plaintiff attended "one physical therapy visit on November 13, 2014, and attempts to contact the claimant for follow up were unsuccessful."  (Id. at 27.)

An ALJ may discount a claimant's testimony due to "an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  In this regard, the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony.  Plaintiff, therefore, is not entitled to summary judgment on this claim.

////

---

[5] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC.  By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

III.  **Lay Witness Testimony**

Plaintiff also argues that the ALJ improperly rejected lay witness testimony. (Pl.'s MSJ (ECF No. 11) at 17-18.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Here, the ALJ recounted the lay witness testimony, stating:

> The claimant's wife, Cassandra Kennedy-Martin, completed a Third Party Function Report on October 11, 2015. Ms. Kennedy-Martin stated she has known the claimant for 25 years and spends all day with him as she is also his care provider. She stated that the claimant will probably never be able to perform a normal job due to his seizures and anxiety. She reported that the claimant goes out maybe only once or twice a week, cannot go out alone, cannot walk more than maybe half a block before needing to rest, and also uses a cane when his back goes out. Ms. Kennedy-Martin further stated that she performs most of the household chores, including cooking, cleaning, and shopping. She stated that the claimant spends most of his time watching television but that they also occasionally play cards or dominoes. She reported that the claimant does not have any problems getting along with others and family will occasionally visit him.

(Tr. at 32.)

The ALJ afforded this testimony "minimal weight" because the lay witness was "not a medical professional," and because "the clinical or diagnostic medical evidence" did "not support her statements." (Id.) However, reliance on the fact that the lay witness was not a medical professional "is clearly erroneous. Lay witness testimony is by definition testimony not provided by an acceptable medical source." Gonzales v. Berryhill, No. 2:15-cv-1771 DB, 2017 WL 1079913, at *9 (E.D. Cal. Mar. 21, 2017). To reject lay witness testimony "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006)).

Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

For the reasons stated above, the ALJ failed to offer any germane reason for rejecting the lay witness testimony. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of the lay witness testimony constituted error.

**IV.    Step Five Finding**

Plaintiff's final claim is that the ALJ's finding as step five of the sequential evaluation was not supported by substantial evidence. (Pl.'s MSJ (ECF No. 11) at 18-20.) At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, the ALJ relied on the testimony of a VE. (Tr. at 35.)

While an ALJ may pose a range of hypothetical questions to a vocational expert ("VE") based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the

////

hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, because the ALJ erroneously rejected the opinions of Drs. Nguyen and Richwerger, as well as the lay witness testimony, the ALJ's hypothetical question to the VE did not account for the limitations established by that evidence. (Tr. at 107-110.) Moreover, at step five of the sequential evaluation the ALJ relied on the VE's testimony that plaintiff's RFC allowed for the performance of the jobs of Cashier II, DICOT 211.462-010, and Fast Food Worker, DICOT 311.472-010. (Tr. at 34, 109.)

Those jobs, however, require reasoning development levels 2 and 3 while the ALJ found that plaintiff's RFC was limited to "understanding, remembering, and carrying out simple, routine and repetitive tasks."[6] (Id. at 23.) In this regard, there appears to be a conflict between plaintiff's RFC and these jobs. See Thomas v. Berryhill, 881 F.3d 672, 678 (8th Cir. 2018) ("By incorporating the definition of level-one reasoning into the RFC, the ALJ indicated that Thomas could perform only occupations at that reasoning level."); Rounds v. Commissioner Social Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015) ("There was an apparent conflict between Rounds' RFC, which limits her to performing one- and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"); Zavalin, 778 F.3d at 847 ("there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and routine work "seems inconsistent with the demands of level-three reasoning"); Celedon v. Colvin, No. 1:13-cv-0449 SMS, 2014 WL 4494507, at *9 (E.D. Cal. Sept. 11, 2014) ("The weight of authority in this circuit, including in this district, has concluded

---

[6] Level 3 reasoning requires a claimant to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. Level 2 reasoning requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Id.

13

that a limitation to simple, repetitive tasks is inconsistent with the DOT's description of jobs requiring GED reasoning Level 3.").

Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ committed an error at step five of the sequential evaluation.

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot say that further administrative proceedings would serve no useful purpose, particularly given the varying outcomes of plaintiff's claims of error. This matter, therefore, will be remanded for further proceedings.

////

////

////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 11) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 14) is granted in part and denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: September 24, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\martin0994.ord